Jason H. Alperstein
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
2222 Ponce de Leon
Miami, Florida 33134
Telephone: (973) 994-1700

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EDWARD WILCZYNSKI, Individually And On Behalf Of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>NATIONSBENEFITS, LLC, NATIONSBENEFITS HOLDINGS, LLC, and AETNA INC.,<br><br>          Defendants. | Case No. _____<br><br><br><br>**COMPLAINT AND**<br>**<u>DEMAND FOR JURY TRIAL</u>** |

**TABLE OF CONTENTS**

Section                                                                                                  Page(s)

I.      NATURE OF THE ACTION ............................................................................... 1

II.     JURISDICTION AND VENUE ......................................................................... 2

III.    PARTIES ............................................................................................................ 3

        A.      Named Plaintiff. ...................................................................................... 3

        B.      Defendants. .............................................................................................. 4

IV.     FACTUAL BACKGROUND ............................................................................ 4

        A.      NationsBenefits is a Prominent Healthcare Company in Florida Trusted by
                Patients and Medical Companies. ........................................................... 4

        B.      The Data Breach. ..................................................................................... 6

        C.      Defendants Violated HIPAA's Requirements To Safeguard Data. ................... 7

        D.      Defendants were On Notice That Highly Valuable Private Information Of Its
                Patients Could Be Breached. ................................................................... 9

        E.      Consequences of the Data Breach for Consumers. ........................... 10

V.      CLASS ACTION ALLEGATIONS ............................................................... 13

VI.     CLAIMS ON BEHALF OF THE NATIONWIDE CLASS ....................... 15

        NEGLIGENCE ........................................................................................... 15

        NEGLIGENCE *PER SE* .............................................................................. 20

        UNJUST ENRICHMENT ......................................................................... 23

        DECLARATORY JUDGMENT ............................................................... 25

VII.    CLAIMS ON BEHALF OF THE STATE SUBCLASS ............................. 27

        NEW JERSEY CONSUMER FRAUD ACT N.J.S.A. § 56:8-1, *ET SEQ.* ................. 27

VIII.   REQUEST FOR RELIEF ............................................................................... 29

IX.     JURY TRIAL DEMANDED ......................................................................... 30

Plaintiff Edward Wilczynski ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendants NationsBenefits, LLC, NationsBenefits Holdings, LLC, and Aetna Inc. (together "NationsBenefits" or the "Defendants"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## I.    <u>NATURE OF THE ACTION</u>

1.    Medical records represent the most sensitive information available concerning a person's private affairs. Congress has passed legislation under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") in order to protect this highly confidential data, because in the wrong hands, bad actors may target and exploit the most sensitive and vulnerable populations among the public. As a health organization, NationsBenefits had obligations to safeguard this information. Plaintiff brings this lawsuit on behalf of himself and all those similarly situated, both across the United States and within New Jersey (collectively, the "Classes"), for NationsBenefits' failure to carry that burden and the resulting harm caused to Plaintiff and the members of the Classes ("Class Members").

2.    On April 13, 2023, NationsBenefits began notifying affected Class Members of a data breach occurring on or about January 30, 2023 ("Data Breach"). NationsBenefits retained this information from affected Class Members for nearly two months, having first learned of the Data Breach on or about February 7, 2023, from the provider of its file transfer software, Fortra, LLC ("Fortra"). According to Fortra, the information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves. This includes names, addresses, Social Security numbers, dates of birth, health insurance information, and other sensitive medical records

(collectively, the "Private Information") and includes personally identifiable information ("PII") and protected health information ("PHI") as defined by HIPAA that Defendants collected and maintained.

3.     As a result of NationsBenefits' actions and negligence in failing to implement adequate and reasonable measures to safeguard Class Members' Private Information, Plaintiff and the Class Members experienced damages from: (i) theft of their Private Information and the resulting loss of privacy rights in that information; (ii) improper disclosure of their Private Information; (iii) loss of value of their Private Information; (iv) the amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures; (v) NationsBenefits' retention of profits attributable to Plaintiff's and other customers' Private Information that NationsBenefits failed to adequately protect; (vi) economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff are now exposed to; (vii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this data breach; and (viii) overpayments of Aetna products and/or services which Plaintiff purchased.

## II.     <u>JURISDICTION AND VENUE</u>

4.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is well over 100, some of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

5.     This Court has personal jurisdiction over Defendants because they are headquartered in Florida; the wrongful acts alleged in this Complaint were committed in Florida,

among other venues; and Defendants have intentionally availed themselves of this jurisdiction by marketing and selling their products and services in Florida.

6.      Venue is proper in this District under (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and 28 U.S.C. § 1391(d) because the transactions giving rise to Plaintiff's claims occurred in Florida; and (2) 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in this District.

### III.   PARTIES

#### A.   Named Plaintiff.

7.      Plaintiff Edward Wilczynski is an individual who, upon information and belief, had his Private Information compromised in the Data Breach. Because Defendants have exclusive but incomplete knowledge of what information was compromised for each individual, including PHI, Plaintiff reserves the right to supplement his allegations with additional facts and injuries as they are discovered.

8.      Plaintiff resides in Saddle Brook, New Jersey. NationsBenefits notified Plaintiff his Private Information was compromised in the Data Breach by letter. As a direct and proximate result of the breach, Plaintiff has made reasonable efforts to mitigate the impact of the breach, including, but not limited to: conducting research about this Data Breach; discussing the breach with Plaintiff's family; and reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud. This is valuable time Plaintiff otherwise could have spent on other activities.

9.      Plaintiff is very concerned about identity theft and the consequences of such theft and fraud resulting from the Data Breach.

10.     Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach, including, but not limited to: (a) damage to and diminution in the

value of Plaintiff's Private Information, a form of property that NationsBenefits obtained from Plaintiff; (b) violation of Plaintiff's privacy rights; and (c) the present and increased risk arising from the identity theft and fraud.

11.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis in an attempt to mitigate and address the harms caused by the Data Breach. Additionally, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come as a result of the Data Breach.

**B.    Defendants.**

12.    NationsBenefits, LLC is a private, limited liability company with its headquarters located at 1801 NW 66th Avenue, Suite 100, Plantation, Florida, 33313.

13.    NationsBenefits Holdings, LLC is a limited liability company organized under Delaware law with its headquarters located at 1801 NW 66th Avenue, Suite 100, Plantation, Florida, 33313.

14.    Aetna Inc. ("Aetna") is a largest non-profit health care network incorporated in Pennsylvania and maintaining its headquarters at 151 Farmington Avenue, Hartford, Connecticut, 06156.

15.    Aetna provides the Private Information of its customers to NationsBenefits in connection with insurance or healthcare services.

**IV.    FACTUAL BACKGROUND**

**A.    NationsBenefits is a Prominent Healthcare Company in Florida Trusted by Patients and Medical Companies.**

16.    NationsBenefits, based in Plantation, Florida, has more than 3,500 employees across all locations and is ranked by Deloitte Technology as one of the fastest growing companies

for delivering health technologies in North America.[1]

17.     In its privacy policy, NationsBenefits states that "we care about your privacy,"[2] and specifically as it relates to third parties, NationsBenefits states that it may:

> We may disclose information about individual users to third parties who provide services to NationsBenefits or have a contractual relationship with NationsBenefits (e.g., independently owned and operated audiology clinics). These third parties provide a variety of services to NationsBenefits, including, without limitation, processing and verifying credit card information, tracking Internet marketing campaigns, and processing credit card transactions. In addition, these services may include enhancing the information NationsBenefits collects about customers of its partner locations. We may also use third-party email providers to assist with sending marketing emails for us or on behalf of franchisees. These companies do not retain, share, store or use personally identifiable information for any secondary purposes. Any personally identifiable information that NationsBenefits shares with its service providers may only be used to provide services to NationsBenefits and/or its partners and the service providers will not be given permission to use such information for other purposes.[3]

18.     The privacy policy does not state that third parties will collect, process, and store PHI that is protected under HIPAA.[4] What NationsBenefits does disclose is that it may use and share user information in order to: "Treat you; Run our organization; Bill for your services; Help with public health and safety issues; Do research; Comply with the law; Respond to organ and tissue donation requests; Work with a medical examiner or funeral director; Address workers' compensation, law enforcement, and other government requests; [and] Respond to lawsuits and legal actions[.]"[5] Yet again, the privacy policy fails to state that PHI will be disclosed to third parties, who may be reckless and/or negligent with said information.

---

[1]  About Us, NATIONSBENEFITS, available at https://www.nationsbenefits.com/about-us (last accessed: May 19, 2023).

[2]  Privacy Policy, NATIONSBENEFITS, available at https://www.nationsbenefits.com/privacy (last accessed: May 19, 2023).

[3]  *Id.*

[4]  *Id.*

[5]  Your HIPAA Rights, NATIONSBENEFITS, available at https://www.nationsbenefits.com/hipaa (last accessed: May 19, 2023).

19.     Aetna, likewise shared confidential patient information protected by HIPAA with NationsBenefits, who administers the hearing aid benefit, as well as the Extra Benefits Card benefit, on some Aetna plans.

**B.     The Data Breach.**

20.     On February 7, 2023, NationsBenefits learned that Fortra experienced a data security incident in which a malicious actor(s) accessed the data of NationsBenefits.[6]  Upon discovering the security incident, NationsBenefits launched an investigation, which was conducted by an outside law firm and a cybersecurity firm. Despite this incident, in its Sample Notice Letter sent to affected Class Members, NationsBenefits states that "[d]ata privacy and security are among our highest priorities, and we have extensive measures in place to protect information entrusted to us."[7]

21.     Upon discovering the incident, NationsBenefits stopped using Fortra's software and notified law enforcement authorities.[8]

22.     When reached by TechCrunch, NationsBenefits spokesperson Michael Fried declined to identify the specific data that was stolen in the incident.[9]

23.     The hackers behind the attack – the Clop ransomware group – gained access to NationsBenefits data on January 30, 2023, and exfiltrated that information from the GoAnywhere MFT solution.[10] A ransom demand was issued, payment of which was required to prevent the

---

[6] *See* Exhibit 1, NationsBenefits Sample Notification Letter.
[7] *Id.*
[8] *Id.*
[9] Zack Whittaker, *NationsBenefits confirms thousands had personal data stolen in Forta breach*, TECHCRUNCH (April 19, 2023), available at https://techcrunch.com/2023/04/19/nationsbenefits-confirms-thousands-had-personal-data-stolen-in-fortra-breach/ (last accessed: May 19, 2023).
[10] HIPPA Journal, *NationsBenefits Holdings Confirms 3 Million Record Data Breach*, available at https://www.hipaajournal.com/nationsbenefits-holdings-confirms-3-million-record-data-breach/ (last accessed May 19, 2023).

publication of the stolen data.[11]

24.     The Clop group exploited a vulnerability in the GoAnywhere MFT solution, which allowed them to access and steal data from vulnerable on-premises MFT servers.[12] NationsBenefits Holdings, LLC, said the Clop group was only able to access two MFT servers; however, a review of the files on those servers revealed they contained the protected health information of 3,037,303 health plan members, including, but not limited to, Aetna ACE, Elevance Health Flexible Benefit Plan, and UAW Retiree Medical Benefits Trust.[13] The compromised information included: first and last name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number.[14]

25.     NationswideBenefits Holdings, LLC began mailing notification letters to affected individuals on April 13, 2023, and has offered complimentary credit monitoring services for 24 months.[15]

### C.     Defendants Violated HIPAA's Requirements To Safeguard Data.

26.     Defendants had duties to ensure that all information they collected and stored was secure, and that they maintained adequate and commercially reasonable data security practices to ensure the protection of plan members' Private Information.

27.     Defendants are covered by HIPAA (*see* 45 C.F.R. § 160.102) and, as such, are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and  Security  Rule  ("Security  Standards  for  the  Protection  of  Electronic  Protected  Health

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

28.     These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider.  *See* 45 C.F.R. § 160.103.

29.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

30.     HIPAA requires that Defendants implement appropriate safeguards for this information.

31.     HIPAA further requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons—*i.e.* non-encrypted data.

32.     Despite these requirements, Defendants failed to comply with their duties under HIPAA and its own privacy practices. Indeed, Defendants failed to:

a)     Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b)     Adequately protect Plaintiff's and Class Members' Private Information;

c)     Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d)     Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e)     Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f)      Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g)      Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h)      Take reasonable and necessary safeguards to ensure that Defendants' business associates adequately protect PHI;

i)      Ensure compliance with the electronically PHI security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

j)      Train all members of its workforce effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out its functions and to maintain security of protected health information, in violation of 45 C.F.R. § 164.530(b).

33.      Defendants failed to comply with their duties under HIPAA and its own privacy policies despite being aware of the risks associated with unauthorized access of members' Private Information.

**D.    Defendants were On Notice That Highly Valuable Private Information Of Its Patients Could Be Breached.**

34.      Defendants were, or should have been, aware that they were collecting highly valuable data, for which Defendants knew, or should have known, there is an upward trend in data breaches in recent years.[16]  Accordingly, Defendants were on notice of the harms that could ensue if they failed to protect patients' data.

35.      As early as 2014, the FBI alerted the healthcare industry that they were an increasingly preferred target of hackers, stating "[t]he FBI has observed malicious actors targeting

---

[16]   *Healthcare Data Breach Statistics*, HIPAA Journal, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last visited May 19, 2023) ("Our healthcare statistics clearly show there has been an upward trend in data breaches over the past 9 years, with 2018 seeing more data breaches reported than any other year since records first started being published.").

healthcare related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or Personally Identifiable Information (Private Information)" so that these companies can take the necessary precautions to thwart such attacks.[17]

36.    Private Information is a valuable commodity to identity thieves. Compromised Private Information is traded on the "cyber black-market." As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, social security numbers and other Private Information directly on various dark web[18] sites making the information publicly available.[19]

37.    Further, medical databases are particularly high value targets for identity thieves. According to one report, a stolen medical identity has a $50 street value on the black market, whereas a Social Security number sells for only $1.[20]

**E.    Consequences of the Data Breach for Consumers.**

38.    Plaintiff and Class Members have suffered actual harm and will continue to be harmed as a result of NationsBenefits' conduct. NationsBenefits failed to institute adequate security measures and neglected system vulnerabilities that led to the Data Breach.

---

[17]    Reuters, *FBI warns healthcare firms they are targeted by hackers*, August 20, 2014, http://www.reuters.com/article/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820 (last visited May 19, 2023).

[18]    The dark web refers to encrypted content online that cannot be found using conventional search engines and can only be accessed through specific browsers and software. MacKenzie Sigalos, *The dark web and how to access it* (Apr. 14, 2018), https://www.cnbc.com/2018/04/13/the-dark-web-and-how-to-access-it.html (last visited May 19, 2023).

[19]    *Here's How Much Your Personal Information Is Selling for on the Dark Web,* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (l last visited May 19, 2023); McFarland et al., *The Hidden Data Economy*, at 3, *available at* https://www.mcafee.com/enterprise/en-us/assets/reports/rp-hidden-data-economy.pdf (last visited May 19, 2023).

[20]    *Study: Few Aware of Medical Identity Theft Risk*, Claims Journal (June 14, 2012), https://www.claimsjournal.com/news/national/2012/06/14/208510.htm (last visited May 19, 2023).

NationsBenefits' failure to keep Plaintiff's and Class Members' Private Information secure has had and will continue to have severe ramifications. Given the sensitive nature of the Private Information stolen in the Data Breach – names, addresses, dates of birth, Social Security numbers, health insurance information, medical record numbers, and patient account number – hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. Class Members may be subject to blackmail from nefarious actors concerning the disclosure of their medical records. As a result, Plaintiff has suffered injury and face an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

39.     Plaintiff's stolen Private Information may now be circulating on the dark web and it is highly valuable. Malicious actors use Private Information to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' Private Information to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create synthetic identities.

40.     Further, malicious actors often wait months or years to use the Private Information obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen Private Information, meaning individuals can be the victim of several cybercrimes stemming from a single data breach. Moreover, although elements of some Plaintiff's and Class Members' data may have been compromised in other data breaches, the fact that the Data Breach centralizes the Private Information and identifies the victims as NationsBenefits' current, former, or prospective customers materially increases the risk to Plaintiff and the Class.

11

41.     The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[21] Moreover, there is often significant lag time between when a person suffers harm due to theft of their Private Information and when they discover the harm. Plaintiff and Class Members will therefore need to spend significant time and money to continuously monitor their accounts for years to ensure their Private Information obtained in the Data Breach is not used to harm them. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of NationsBenefits' Data Breach. In other words, Plaintiff and Class Members have been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Data Breach.

42.     Plaintiff and Class Members have also been harmed and damaged in the amount of the market value of the hacker's access to Plaintiff's and Class Members' Private Information that was permitted without authorization by NationsBenefits. This market value for access to Private Information can be determined by reference to both legitimate and illegitimate markets for such information.

43.     In sum, Plaintiff and Class Members were injured by: (i) the theft of their Private Information and the resulting loss of privacy rights in that information; (ii) the improper disclosure of their Private Information; (iii) the loss of value of their Private Information; (iv) the lost value of access to Plaintiff's and Class Members' Private Information permitted by NationsBenefits; (v)

---

[21] U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 42 (June 2007), available at https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last visited May 19, 2023).

the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of NationsBenefits' Data Breach; (vi) NationsBenefits' retention of profits attributable to Plaintiff's and Class Members' Private Information that NationsBenefits failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) the ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (ix) the overpayments to Aetna for goods and services purchased, as Plaintiff reasonably believed a portion of the sale price would fund reasonable security measures that would protect their Private Information, which was not the case; and (x) their nominal damages.

## V.     CLASS ACTION ALLEGATIONS

44.     In accordance with Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff bring this case as a class action on behalf of a Nationwide Class and a New Jersey Subclass, defined as follows:

### Nationwide Class

All persons in the United States whose Private Information was maintained on the NationsBenefits systems that were compromised as a result of the breach announced by NationsBenefits on or around April 13, 2023.

### New Jersey Sub-Class

New Jersey Sub-Class: All persons in the State of New Jersey whose Private Information was maintained on NationsBenefits systems that were compromised as a result of the breach announced by NationsBenefits on or around April 13, 2023.

45.     The Classes are each so numerous that joinder of all members is impracticable. On information and belief, the Classes each have more than 1,000 members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

46.     There are numerous questions of law and fact common to Plaintiff and Class Members. These common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendants owed Plaintiff and other Class Members a duty to implement and maintain reasonable security procedures and practices to protect their Private Information, and whether they breached that duty;

b.      Whether Defendants continues to breach duties to Plaintiff and other Class Members;

c.      Whether Defendants' data security systems before the data breach met industry standards;

d.      Whether Defendants failed to adequately respond to the data breach, including failing to investigate it diligently and promptly notify affected individuals in the most expedient time possible and without unreasonable delay;

e.      Whether Plaintiff and other Class Members' Private Information was compromised in the data breach; and

f.      Whether Plaintiff and other Class Members are entitled to damages as a result of Defendants' conduct.

47.     Plaintiff's claims are typical of the Classes' claims. Plaintiff suffered the same injury as Class Members—i.e., Plaintiff's Private Information was compromised in the Data Breach.

48.     Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including data breach class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do

so. Neither Plaintiff nor his counsel has interests that conflict with those of the proposed Classes.

49.     Defendants have engaged in a common course of conduct toward Plaintiff and other Class Members. The common issues arising from this conduct that affect Plaintiff and other Class Members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

50.     A class action is the superior method for the fair and efficient adjudication of this controversy. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions are low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendants. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendants' records and the records available publicly will easily identify the Class Members. The same common documents and testimony will be used to prove Plaintiff's claims

51.     A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

## VI.    CLAIMS ON BEHALF OF THE NATIONWIDE CLASS

### COUNT 1

### NEGLIGENCE

**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the New Jersey Subclass**

52.     Plaintiff repeats and realleges the allegations contained in Sections I through V as

if fully set forth herein.

53.     NationsBenefits collected sensitive Private Information from Plaintiff and Class Members when using NationsBenefits products and services.

54.     NationsBenefits owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their Private Information in its possession from being compromised, lost, stolen, accessed or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing NationsBenefits' security systems to ensure that Plaintiff's and Class Members' Private Information in NationsBenefits' possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

55.     NationsBenefits' duty to use reasonable care arose from several sources, including but not limited to those described herein.

56.     NationsBenefits had common law duties to prevent foreseeable harm to Plaintiff and Class Members. These duties existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices.

57.     NationsBenefits' duty to use reasonable security measures also arose as a result of the special relationship that existed between NationsBenefits, on the one hand, and Plaintiff and Class Members, on the other hand. The special relationship arose because Plaintiff and Class Members entrusted NationsBenefits with their Private Information and sensitive healthcare information. NationsBenefits alone could have ensured that its security systems and data storage

architecture were sufficient to prevent or minimize the Data Breach.

58.     Defendants are covered by HIPAA (*see* 45 C.F.R. § 160.102) and as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

59.     These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider.  *See* 45 C.F.R. § 160.103.

60.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

61.     HIPAA requires that Defendants implement appropriate safeguards for this information.

62.     NationsBenefits' duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect Private Information by companies such as NationsBenefits. Various FTC publications and data security breach orders further form the basis of NationsBenefits' duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

63.     NationsBenefits admits that it has a responsibility to protect consumer data, that it is entrusted with this data, and that it did not live up to its responsibility to protect the Private

Information at issue here.

64.     NationsBenefits knew or should have known that its computing systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential Private Information.

65.     NationsBenefits also had a duty to safeguard the Private Information of Plaintiff and Class Members and to promptly notify them of a breach because of state laws and statutes that require NationsBenefits to reasonably safeguard sensitive Private Information, as detailed herein.

66.     Timely, adequate notification was required, appropriate and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by NationsBenefits' misconduct.

67.     NationsBenefits breached the duties they owed to Plaintiff and Class Members described above and, thus, was negligent in failing to do so. NationsBenefits breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the Private Information of Plaintiff and Class Members; (b) detect the Data Breach while it was ongoing; (c) maintain security systems consistent with industry standards during the period of the Data Breach; (d) comply with regulations protecting the Private Information at issue during the period of the Data Breach; and (e) disclose in a timely and adequate manner that Plaintiff's and the Class Members' Private Information in NationsBenefits' possession had been or was reasonably believed to have been,

stolen or compromised.

68.     But for NationsBenefits' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

69.     NationsBenefits' failure to take proper security measures to protect the sensitive Private Information of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional act, namely the unauthorized access of Plaintiff's and Class Members' Private Information.

70.     Plaintiff and Class Members were foreseeable victims of NationsBenefits' inadequate data security practices, and it was also foreseeable that NationsBenefits' failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiff and Class Members as described in this Complaint.

71.     As a direct and proximate result of NationsBenefits' negligence, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: (a) the ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (c) the loss of the value of their privacy and the confidentiality of the stolen Private Information; (d) the illegal sale of the compromised Private Information on the black market; (e) mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (f) the time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (g) the expenses incurred and time spent initiating fraud alerts; (h) the resulting decrease in credit scores and ratings; (i) their lost work time; (j) the lost value of the Private Information; (k) the lost value of access to their

Private Information permitted by NationsBenefits; (l) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of NationsBenefits' Data Breach; (m) lost benefit of their bargains and overcharges for services or products; and (n) the nominal and general damages and other economic and non-economic harm suffered.

## COUNT 2

### NEGLIGENCE *PER SE*

**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the New Jersey Subclass**

72.   Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

73.   Defendants are covered by HIPAA (*see* 45 C.F.R. § 160.102) and as such is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

74.   These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider.  *See* 45 C.F.R. § 160.103.

75.   HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

76.   HIPAA requires that Defendants implement appropriate safeguards for this

information.

77.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, also prohibits "unfair. . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as NationsBenefits of failing to use reasonable measures to protect Private Information.

78.     The FTC publications and orders also form the basis of NationsBenefits' duty.

79.     NationsBenefits violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards. NationsBenefits' conduct was particularly unreasonable given the nature and amount of Private Information it obtained, stored, and disseminated, and the foreseeable consequences of a data breach involving a company as large as NationsBenefits, including, specifically the damages that would result to Plaintiff and Class Members.

80.     In addition, under state data security statutes, NationsBenefits had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' Private Information.

81.     NationsBenefits' violation of HIPAA and Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

82.     Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

83.     The harm that has occurred is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

84.     NationsBenefits breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

85.     Plaintiff and Class Members were foreseeable victims of NationsBenefits' violations of the HIPAA, the FTC Act, and state data security statutes. NationsBenefits knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and Class Members.

86.     But for NationsBenefits' violation of the applicable laws and regulations, Plaintiff's and Class Members' Private Information would not have been accessed by unauthorized parties.

87.     As a direct and proximate result of NationsBenefits' negligence *per se*, Plaintiff and Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: (a) the ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (c) the loss of the value of their privacy and the confidentiality of the stolen Private Information; (d) the illegal sale of the compromised Private Information on the black market; (e) the mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (f) the time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (g) the expenses incurred and time spent initiating fraud alerts; (h) the resulting decrease in credit scores and ratings; (i) their lost work time; (j) the lost value of the Private Information; (k) the lost value of access to their Private Information permitted by NationsBenefits; (l) the amount of the actuarial present value of

22

ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of NationsBenefits' Data Breach; (m) the lost benefit of their bargains and overcharges for services or products; and (n) nominal and general damages; and other economic and non-economic harm.

**COUNT 3**

**UNJUST ENRICHMENT**

**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the New Jersey Subclass**

88.     Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

89.     Plaintiff and Class Members have an interest, both equitable and legal, in the Private Information about them that was conferred upon, collected by, and maintained by NationsBenefits, and that was ultimately stolen in the Data Breach.

90.     NationsBenefits benefitted by the conferral upon it of the Private Information pertaining to Plaintiff and Class Members and by its ability to retain, use, sell, and profit from that information. NationsBenefits understood that it was in fact so benefitted.

91.     NationsBenefits also understood and appreciated that the Private Information pertaining to Plaintiff and Class Members was private and confidential and its value depended upon NationsBenefits maintaining the privacy and confidentiality of that Private Information.

92.     But for NationsBenefits' willingness and commitment to maintain its privacy and confidentiality, that Private Information would not have been transferred to and entrusted with NationsBenefits.

93.     Because of its use of Plaintiff's and Class Members' Private Information, NationsBenefits sold more services and products than they otherwise would have. NationsBenefits

was unjustly enriched by profiting from the additional services and products they were able to market, sell, and create to the detriment of Plaintiff and Class Members.

94.     NationsBenefits also benefitted through its unjust conduct by retaining money that they should have used to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

95.     NationsBenefits further benefitted through its unjust conduct in the form of the profits they gained through the use of Plaintiff's and Class Members' Private Information.

96.     The benefits conferred upon, received, and enjoyed by NationsBenefits were not conferred officiously or gratuitously. Under the circumstances, it would be inequitable, unfair, and unjust for NationsBenefits to retain these wrongfully obtained benefits. NationsBenefits' retention of wrongfully obtained monies would also violate fundamental principles of justice, equity, and good conscience.

97.     As a result of NationsBenefits' wrongful conduct as alleged in this Complaint (including among things its failure to employ adequate data security measures, its continued maintenance and use of the Private Information belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that Private Information), NationsBenefits has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

98.     NationsBenefits' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

99.     NationsBenefits' defective security and its unfair and deceptive conduct have,

among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their Private Information and has caused the Plaintiff and Class Members other damages as described herein.

100.    Plaintiff has no adequate remedy at law.

101.    NationsBenefits is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on NationsBenefits as a result of its wrongful conduct, including specifically: (a) the value to NationsBenefits of the Private Information that was stolen in the Data Breach; (b) the profits NationsBenefits received and is receiving from the use of that information; (c) the amounts that NationsBenefits overcharged Plaintiff and Class Members for use of NationsBenefits' products and services; and (d) the amounts that NationsBenefits should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

## COUNT 4

### DECLARATORY JUDGMENT

**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the New Jersey Subclass**

102.    Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

103.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. The Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

104.    An actual controversy has arisen in the wake of the NationsBenefits Data Breach regarding its present and prospective common law and other duties to reasonably safeguard its

customers' Private Information and whether NationsBenefits is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information. Plaintiff and Class Members continues to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future given the publicity around the Data Breach and the nature and quantity of the Private Information stored by NationsBenefits.

105.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

        a.        NationsBenefits continues to owe a legal duty to secure consumers' Private Information and to timely notify consumers of a data breach under the common law, HIPAA, Section 5 of the FTC Act, and various state statutes; and

        b.        NationsBenefits continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information.

106.    The Court also should issue corresponding prospective injunctive relief requiring NationsBenefits to employ adequate security protocols consistent with law and industry standards to protect consumers' Private Information.

107.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at NationsBenefits. The risk of another data breach is real, immediate, and substantial. If another breach of NationsBenefits' systems occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

108.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to NationsBenefits if an injunction is issued. Among other things, if another massive data breach occurs at NationsBenefits, Plaintiff and Class Members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to NationsBenefits of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and NationsBenefits has a pre-existing legal obligation to employ such measures.

109.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at NationsBenefits, thus eliminating the additional injuries that would result to Plaintiff, Class Members, and the millions of consumers whose confidential information would be further compromised.

## VII.    CLAIMS ON BEHALF OF THE NEW JERSEY SUBCLASS

### COUNT 5

**NEW JERSEY CONSUMER FRAUD ACT N.J.S.A. § 56:8-1, *ET SEQ.***

110.    Plaintiff re-alleges and incorporates by reference preceding factual allegations found in Sections I through V as if fully set forth herein. Plaintiff brings this claim individually and on behalf of the New Jersey Subclass.

111.    Plaintiff and all New Jersey Class Members are "consumers" as that term is defined by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1.

112.    Defendants are a "person" as that term is defined by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1(d).

113.    Defendants' conduct as alleged related to "sales," "offers for sale," or "bailment" as defined by N.J.S.A. 56:8-1.

114.    Defendants advertised, offered, or sold goods or services in New Jersey and engaged in trade or commerce directly or indirectly affecting the citizens of New Jersey.

115.    Defendants solicited Plaintiff and New Jersey Class Members to do business and uniformly and knowingly misrepresented that by joining, their Private Information was safe, confidential, and protected from intrusion, hacking, or theft.

116.    Defendants misrepresented that they would protect the privacy and confidentiality of Plaintiff's and the New Jersey Class Members' Private Information, including by implementing and maintaining reasonable security measures.

117.    Defendants intended to mislead Plaintiff and the New Jersey Class Members and induce them to rely on their misrepresentations and omissions.

118.    Defendants failed to implement and maintain reasonable security and privacy measures to protect Plaintiff and the New Jersey Class Members' Private Information in violation of N.J.S.A. 56:8-162, which was a direct and proximate cause of the Data Breach.

119.    Defendants failed to provide notice to Plaintiff and the New Jersey Class Members or otherwise comply with the notice requirements of N.J.S.A. 56:8-163.

120.    Defendants' acts and omissions, as set forth evidence a lack of good faith, honesty in fact and observance of fair dealing, so as to constitute unconscionable commercial practices, in violation of N.J.S.A. 56:8-2.

121.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and the New Jersey Class Members: (a) have been required, and will continue, to expend sums to protect and recover their Private Information; (b) have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; (c) have expended significant time and

expenses related to monitoring their financial accounts for fraudulent activity; (d) are subject to an increased, imminent risk of fraud and identity theft; and (e) have lost the value of their Private Information, and thereby suffered ascertainable economic loss.

122. Plaintiff and New Jersey Class Members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, injunctive relief, and attorneys' fees and costs.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff and Class Members demand judgment as follows:

A. Certification of the action as a Class Action under Federal Rule of Civil Procedure 23, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B. That acts alleged above be adjudged and decreed to constitute negligence and violations of the consumer protection laws of New Jersey;

C. A judgment against Defendants for the damages sustained by Plaintiff and the Classes above, and for any additional damages, penalties, and other monetary relief provided by applicable law;

D. An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes, including, but not limited to:

1. Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

2. Ordering that Defendants engage third-party security auditors and internal

personnel to run automated security monitoring;

3.  Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

4.  Ordering that Defendants segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, unauthorized third parties cannot gain access to other portions of Defendants' systems;

5.  Ordering that Defendants purge, delete, and destroy in a reasonably secure manner consumer data not necessary for their provisions of services;

6.  Ordering that Defendants conduct regular database scanning and securing checks; and

7.  Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

E.  By awarding Plaintiff and Class Members prejudgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after service of this Complaint;

F.  The costs of this suit, including reasonable attorney fees; and

G.  Such other and further relief as the Court deems just and proper.

## IX.  **JURY TRIAL DEMANDED**

Plaintiff, individually and on behalf of all those similarly situated, requests a jury trial, under Federal Rule of Civil Procedure 38, on all claims so triable.

DATED: May 22, 2023               Respectfully submitted,

*/s/ Jason H. Alperstein*
Jason H. Alperstein (FBN 64205)
Zachary S. Bower (FBN 17506)
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
2222 Ponce de Leon
Miami, Florida 33134
Tel.: (973) 994-1700
jalperstein@carellabyrne.com
zbower@carellabyrne.com

James E. Cecchi*
Kevin G. Cooper*
Jordan M. Steele*
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com
jsteele@carellabyrne.com

***Attorneys for Plaintiff and the Proposed Class***
*** To be admitted pro hac vice***